**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LEON STAMBLER | § | |
| | § | |
| vs. | § | CASE NO. 2:10-CV-181-DF-CE |
| | § | |
| ING BANK, FSB., ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

On May 28, 2010, plaintiff Leon Stambler ("Plaintiff" or "Stambler") brought suit against numerous defendants ("Defendants"), alleging infringement of U.S. Patent No. 5,793,302 (the "'302 Patent") and U.S. Patent No. 5,974,148 (the "'148 Patent"). These patents share a common specification[1] and are both entitled "Method for Securing Information Relevant to a Transaction." This Court has previously provided claim constructions for numerous terms and phrases in the '148 and '302 patents. *See Stambler v. JPMorgan Chase & Co., et al.*, No. 08-204-DF-CE ("*JPMorgan*"); *Stambler v. Merrill Lynch & Co., Inc., et al.*, No. 08-462-DF-CE ("*Merrill Lynch*"); *Stambler v. Amazon.com, Inc., et al.*, No. 09-310-DF ("*Amazon*"). The technical background of the patents-in-suit is set forth in the previous orders of this court and, therefore, will not be repeated here. *See, e.g., JPMorgan*, Dkt. No. 393.

The court held a *Markman* hearing on May 25, 2011. After considering the submissions and the arguments of counsel, the court issues the following order concerning the parties' claim construction disputes.

### II.    GENERAL PRINCIPLES GOVERNING CLAIM CONSTRUCTION

"A claim in a patent provides the metes and bounds of the right which the patent confers

---

[1] References to the common specification of the patents-in-suit will be made to the '302 Patent's specification.

on the patentee to exclude others from making, using or selling the protected invention." *Burke,*

*Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999).  Claim construction

is an issue of law for the court to decide.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967,

970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, the court looks to three primary sources: the claims,

the specification, and the prosecution history.  *Markman*, 52 F.3d at 979.  The specification must

contain a written description of the invention that enables one of ordinary skill in the art to make

and use the invention.  *Id.*  A patent's claims must be read in view of the specification, of which

they are a part.  *Id.*  For claim construction purposes, the description may act as a sort of

dictionary, which explains the invention and may define terms used in the claims.  *Id.*  "One

purpose for examining the specification is to determine if the patentee has limited the scope of

the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of

the patentee's invention.  Otherwise, there would be no need for claims.  *SRI Int'l v. Matsushita*

*Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc).  The patentee is free to be his own

lexicographer, but any special definition given to a word must be clearly set forth in the

specification.  *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992).

Although the specification may indicate that certain embodiments are preferred, particular

embodiments appearing in the specification will not be read into the claims when the claim

language is broader than the embodiments.  *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*,

34 F.3d 1048, 1054 (Fed. Cir. 1994).

This court's claim construction decision must be informed by the Federal Circuit's

decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).  In *Phillips*,

the court set forth several guideposts that courts should follow when construing claims.  In particular, the court reiterated that "the *claims* of a patent define the invention to which the patentee is entitled the right to exclude."   415 F.3d at 1312 (emphasis added) (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  To that end, the words used in a claim are generally given their ordinary and customary meaning.  *Id.*  The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  *Id.* at 1313.  This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention and that patents are addressed to and intended to be read by others skilled in the particular art.  *Id.*

The primacy of claim terms notwithstanding, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  *Id.*  Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument."  *Id.* at 1315 (quoting *Markman*, 52 F.3d at 978).  Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims.  *Id.* at 1314-17.  As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims."  *Bates v. Coe*, 98 U.S. 31, 38 (1878).  In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir.

3

1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.  The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316.  Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the PTO understood the patent.  *Id*. at 1317.  Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings.  *Id*.  Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims.  *Id.*

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony.  The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319-24.  The approach suggested by *Texas Digital*—the assignment of a limited role to the specification—was rejected as inconsistent with decisions holding the specification to be the best guide to the meaning of a disputed term.  *Id*. at 1320-21.  According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of

4

"focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id*. at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id.* What is described in the claims flows from the statutory requirement imposed on the patentee to describe and particularly claim what he or she has invented. *Id.* The definitions found in dictionaries, however, often flow from the editors' objective of assembling all of the possible definitions for a word. *Id*. at 1321-22.

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id*. at 1323-25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

The patents-in-suit include claim limitations that Defendants contend fall within the scope of 35 U.S.C. § 112, ¶ 6. "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure. . . in support thereof, and such claim shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. The first step in construing a means-plus-function limitation is to identify the recited function. *See Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999). The second step in the analysis is to identify in the specification the structure corresponding to the recited function. *Id.* The "structure disclosed in the specification is 'corresponding' structure only if the specification or

prosecution history clearly links or associates that structure to the function recited in the claim." *Medical Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1210 (Fed. Cir. 2003) (citing *B. Braun v. Abbott Labs*, 124 F.3d 1419, 1424 (Fed. Cir. 1997)).   The patentee must clearly link or associate structure with the claimed function as part of the quid pro quo for allowing the patentee to express the claim in terms of function pursuant to § 112, ¶ 6.  *See id.* at 1211; *see also Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1377 (Fed. Cir. 2001).   The "price that must be paid" for use of means-plus-function claim language is the limitation of the claim to the means specified in the written description and equivalents thereof.  *See O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1583 (Fed. Cir. 1997).   "If the specification does not contain an adequate disclosure of the structure that corresponds to the claimed function, the patentee will have 'failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112,' which renders the claim invalid for indefiniteness."  *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1382 (Fed. Cir. 2009) (quoting *In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (en banc)).   It is important to determine whether one of skill in the art would understand the specification itself to disclose the structure, not simply whether that person would be capable of implementing the structure.   *See Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1382 (Fed. Cir. 1999); *Biomedino*, 490 F.3d at 953. Fundamentally, it is improper to look to the knowledge of one skilled in the art separate and apart from the disclosure of the patent.  *See Medical Instrumentation*, 344 F.3d at 1211-12.  "[A] challenge to a claim containing a means-plus-function limitation as lacking structural support requires a finding, by clear and convincing evidence, that the specification lacks disclosure of structure sufficient to be understood by one skilled in the art as being adequate to perform the recited function."  *Budde*, 250 F.3d at 1376-77.

### III.    CLAIM TERMS IN DISPUTE

### a.  "a third party for determining"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| a party, other than the first or second parties, that performs the determining step of the claim | A party, other than the party that generates the VAN, for determining |

Plaintiff's proposed construction of the phrase "a third party for determining" was adopted by this court in *JPMorgan* and *Merrill Lynch*, and was agreed to by the parties in *Amazon*. Having carefully reviewed Defendants' arguments, the court is not convinced that its previous construction of this phrase is incorrect. As such, the court rejects Defendants' proposed construction and construes this phrase to mean "a party, other than the first or second parties, that performs the determining step of the claim."

### b.  "party"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| a person or entity, a computer system or systems, or a person or entity using a computer system or systems | a person or legal entity, including computer systems put in use by that person or entity |

Plaintiff's proposed construction of the term "party" is the construction this court adopted in *Amazon*. Furthermore, in *Amazon*, this court considered Defendants' proposed construction and rejected it. The court is not convinced that its previous analysis of this term is incorrect. Consequently, the court rejects Defendants' proposed construction. The court construes the term "party" to mean "a person or entity, a computer system or systems, or a person or entity using a computer system or systems."

### c. "secret key of the payor/first payor/originator"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| key that is generated by coding information associated with and known, prior to any coding, only by the payor/first party/originator and those intended to know it | a key that is known only to the [payor/first party/originator] and those intended to know it and that exists beyond the duration of a particular transaction |

Plaintiff's proposed construction is the construction this court adopted in *Amazon*. Further, in both *JPMorgan* and *Merrill Lynch* the court rejected Defendants' proposed "and that exists beyond the duration of a particular transaction" limitation.  Having carefully reviewed Defendants' arguments, the court is not convinced that the construction it adopted in *Amazon* is erroneous.   Accordingly, the court rejects Defendants' proposed construction and adopts Plaintiff's. This phrase means "key that is generated by coding information associated with and known, prior to any coding, only by the payor/first party/originator and those intended to know it."

### d. "authentic"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| unchanged, from a stated origin, or not fraudulent | Indefinite. Alternatively: "unchanged and from a stated origin, or not fraudulent |

Defendants first argue that the term "authentic" is indefinite.  Given that this court has construed "authentic" on three previous occasions, the court concludes that this phrase is not insolubly ambiguous.  As such, the court rejects Defendants' argument that the term "authentic" is indefinite.

In *Amazon*, this court construed the term "authentic" to mean "unchanged, from a stated origin, or not fraudulent."  Defendants' arguments have not convinced this court that its previous

construction is incorrect.  As such, the court rejects Defendants' arguments and concludes that

the term "authentic" means "unchanged, from a stated origin, or not fraudulent."

### e.  "authenticity" / "authenticating" / "authentication"

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| Authenticity | This term does not need to be construed separate from the phrases in which it appears, which the parties have agreed to construe. | Indefinite. Alternatively: authenticity of [X] means that [X] is "unchanged and from a stated origin, or not fraudulent" |
| Authenticating | '302 Patent; Claims 41 and 51: no construction necessary because the preamble is not limiting<br>'302 Patent; Claim 31: "verifying" | Indefinite. Alternatively: authenticating [X] means: verifying that [X] is "unchanged and from a stated origin, or not fraudulent" |
| Authentication | verification of identity or that information is unchanged, from a stated origin, or not fraudulent | Indefinite. Alternatively: authentication of [X] means: verification that [X] is "unchanged and from a stated origin, or not fraudulent" |

Defendants argue that the terms "authenticity," "authenticating," and "authentication" are

indefinite.  As discussed above, however, the court rejects this argument.  Defendants also argue

that the terms must be construed in accordance with the construction of their root – that is,  the

terms must be construed consistently with the court's construction of the term "authentic."  This

court's previous constructions of the various authentication terms, however, demonstrates that

the appropriate construction of these terms cannot be divorced from the various contexts in

which they are used in the claims.  The court, therefore, rejects Defendants' argument that all

variants of the term "authentic" have the same meaning and also rejects Defendants' proposed

constructions of the terms "authenticity," "authenticating," and "authentication."

With regard to the correct construction of these terms, the term "authentication" is recited

in the phrase "variable authentication number" and "authentication … being denied if…."  Given

9

that the court has concluded that the various authentication terms should not be constructed in the abstract, the court rejects Plaintiff's proposed construction because it attempts to capture the use of the tem "authentication" in both of its varied contexts – that is, as used in "variable authentication number" and "authentication … being denied if…."  The court will address the appropriate construction of "variable authentication number" below.  With regard to the phrase "authentication … being denied if…", it is apparent that this phrase uses the term "authentication" in a manner consistent with the use of the term "authentic."  As such, the court concludes that "authentication" as used in this phrase means "verification that information is unchanged, from a stated origin, or not fraudulent."[2]

The term "authenticating" appears in three of the asserted claims of the '302 Patent.  In asserted claims 41 and 51, the term appears in the preamble in the following form: "[a] method for authenticating the transfer of funds… ."  The court agrees with Plaintiff that the preamble terms need not be construed because the preamble is not limiting in the context of these claims – that is, the body of the claims explain what information is authenticated and the manner in which it is authenticated.[3]  *Am. Med. Sys., Inc. v. Biolitec, Inc*., 618 F.3d 1354, 1358-59 (Fed. Cir. 2010) (explaining that whether a preamble term is limiting is "determined on the facts of each case in light of the claim as a whole and the invention described in the patent.").  In asserted claim 31, the term "authenticating" appears in the following form: "the second party authenticating at least a portion of the received non-secret information associated with the first

---

[2]    Regarding dependent claims 47 and 56, Defendants maintain that "authentication and the transfer of funds being denied" is indefinite because the phrase lacks antecedent basis.  The court rejects this argument.  Independent claims 41 and 51 recite "[a] method for *authenticating* the *transfer of funds*" and claims 47 and 56 explain that authentication and transfer is denied if at least a portion of the credential information cannot be "secured" to the party.

[3]    Defendants make no attempt to argue that the preamble is limiting in the context of these claims.

party… ."  Plaintiff argues that in the context of claim 31, the term "authenticating" should be construed to mean "verifying that [X] is unchanged, from a stated origin, or not fraudulent."  The court agrees with Plaintiff that its proposed construction accurately captures the use of the term "authenticating" in claim 31.  As such, the court adopts Plaintiff's proposed construction.

Finally, the court agrees with Plaintiff that the term "authenticity" should be construed in the context of the phrases in which it appears.  As such, the appropriate construction of these phrases will be discussed in section "h" below.

### f.   "variable authentication number (VAN)"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| an encoded variable number that can be used in verifying the identity of a party or the integrity of information or both, the number generated by coding information relevant to a transaction, document, or thing (including an error detection code formed therefrom) with either a joint key or information associated with or assigned or related to at least one party to the transaction or issuance of the documents or thing | an encoded variable number that can be used in verifying the identity of a party or verifying that information is unchanged and from a stated source |

In *JPMorgan*, *Merrill Lynch*, and *Amazon*, this court construed the term "variable authentication number (VAN)" to mean "an encoded variable number that can be used in verifying the identity of a party or the integrity of information or both."  The first portion of Plaintiff's proposed construction mirrors the court's previous construction.  The court, however, rejected the second portion of Plaintiff's proposed construction in *Amazon* and is not convinced that it erred in doing so.  Furthermore, the court again rejects Defendants' argument that the court's construction of "variable authentication number (VAN)" must be consistent with the court's construction of "authentic."  In conclusion, the court adopts its previous construction of

the term "variable authentication number (VAN)" – that is, "an encoded variable number that can be used in verifying the identity of a party or the integrity of information or both."

    **g.**  **"if the at least a portion of the received funds transfer information and the VAN are determined to be authentic"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| if the at least a portion of the received funds transfer information is unchanged and the VAN is not fraudulent | Indefinite.   Alternatively: if the at least a portion of the received funds transfer information and the VAN are unchanged and from a stated origin |

This phrase was previously construed in *JPMorgan*, and the parties in *Merrill Lynch* and *Amazon* agreed to the court's *JPMorgan* construction.  As such, the court is not convinced that this phrase is insolubly ambiguous and rejects Defendants' indefiniteness argument. Furthermore, Plaintiff's proposed construction mirrors this court's previous construction of the phrase in *JPMorgan*, and the court rejects Defendants' arguments that the court's previous construction is incorrect.  Accordingly, the court construes the term "if the at least a portion of the received funds transfer information and the VAN are determined to be authentic" to mean "if the at least a portion of the received funds transfer information is unchanged and the VAN is not fraudulent."

### h.  "authenticity" terms

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "including the VAN with the instrument for subsequent use in attesting to the authenticity of the instrument" | including the VAN with the instrument for subsequent use in verifying that the information in the instrument has not changed and verifying that the instrument originated from the first party | indefinite; alternatively, including the VAN with the instrument for subsequent use in verifying that the instrument has not changed and verifying that the instrument originated from the first party |
| "the originator's VAN being usable to determine the authenticity of the one or more pieces of payment information" | the originator's VAN being usable to verify that the one or more pieces of payment information has not changed and to verify that the one or more pieces of payment information originated from the originator party | indefinite; alternatively, the originator's VAN being usable to verify that the one or more pieces of payment information has not changed and to verify that the one or more pieces of payment information originated from the originator party |
| "the VAN being used for attesting to the authenticity of the payor and document information" | the VAN being used to verify that the instrument originated from the payor and that the at least a portion of the document information used to create the VAN has not changed | indefinite; alternatively, the VAN being used to verify that the payor is not fraudulent and that the document information used to create the VAN originated from the payor and has not changed |

For these three phrases, which include the term "authenticity," Plaintiff proposes this court's previous constructions in *Amazon*.[4]  Having reviewed Defendants' arguments, the court is not convinced that its previous constructions were erroneous.  As such, the court adopts the following constructions: (1) "including the VAN with the instrument for subsequent use in attesting to the authenticity of the instrument" means "including the VAN with the instrument for subsequent use in verifying that the information in the instrument has not changed and verifying that the instrument originated from the first party"; (2) "the originator's VAN being usable to determine the authenticity of the one or more pieces of payment information" means "the originator's VAN being usable to verify that the one or more pieces of payment information has

---

[4]      As discussed above, considering that this court has construed these phrase on previous occasions, the court rejects Defendants' indefiniteness arguments.

not changed and to verify that the one or more pieces of payment information originated from the originator party"; and (3) "the VAN being used for attesting to the authenticity of the payor and document information" means "the VAN being used to verify that the instrument originated from the payor and that the at least a portion of the document information used to create the VAN has not changed."

### i. "transferring funds" limitations

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| to cause funds to pass such as by recording a debit or credit or by instructing another to record a debit or credit | to cause funds to pass (rather than providing mere instructions to cause funds to pass) from the first account of the first party to the second account of the second party, such as by debiting or crediting |

In *Amazon*, the court construed "transferring funds from the first account of the first party to the second account of the second party" to mean "to cause funds to pass from the first account of the first party to the second account of the second party, such as by debiting or crediting." Plaintiff argues that this construction needs to be clarified so as to explain that transferring occurs when a debit or credit is recorded or another person is instructed to record a debit or credit. Plaintiff, however, fails to provide any support for its argument that funds are transferred when a debit or credit is recorded. The court, therefore, rejects this proposed limitation. Furthermore, this court previously rejected Plaintiff's "instructing another" limitation in *Amazon*, and, having reviewed Plaintiff's arguments, the court is not convinced that it erred in doing so. As such, the court rejects Plaintiff's proposed construction.

Defendants' proposed construction adopts this court's *Amazon* construction, except that it explicitly states that providing instructions is not sufficient to meet the "transferring funds" limitations. The court concludes that Defendants' proposed construction provides clarity to this

court's construction in *Amazon*.  As such, the court construes "transferring funds" to mean "to cause funds to pass (rather than providing instructions[5] to cause funds to pass) from the first account of the first party to the second account of the second party, such as by debiting or crediting."

### j.  "credential"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| a non-secret document or information obtained from a trusted source that is transferred or presented for purposes of determining the identity of a party | a document or thing that is issued to an enrolled party from a trusted source, and is transferred or presented by the party for purposes of determining the identity of the party during a subsequent transaction |

Except for the "non-secret" limitation, Plaintiff's proposed construction was adopted by this court in *JPMorgan*, *Merrill Lynch*, and *Amazon*.  The court has considered Defendants' proposed construction and arguments.  The court, however, is not convinced that its previous construction of this term is erroneous, and thus, the court rejects Defendants' proposed construction.  Furthermore, in *Merrill Lynch* and *JPMorgan*, the court rejected Plaintiff's proposed "non-secret" limitation, and the court concludes that its reasoning in those cases is sound.  Accordingly, the court construes the term "credential" as in *JPMorgan*, *Merrill Lynch*, and *Amazon* to mean "a document or information obtained from a trusted source that is transferred or presented for purposes of determining the identity of a party."

### k.  "credential information"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| information stored or contained in a credential | information stored or contained on a credential |

---

[5]   The court has left out Defendants' proposed "merely" because it adds nothing to the construction of the claim limitations.

The parties' dispute with regard to the term "credential information" is whether the information is stored "in" or "on" a credential.  Plaintiff argues that Defendants' proposed "on" limitation reads out embodiments disclosing "personal storage media" as an exemplary type of credential.  *See* '302 Patent at 8:54-58 (explaining that it "is contemplated that this system would be useful for all types of credentials and records; for example, motor vehicle registrations, social security cards, passports, birth certificates and all types of identification cards or personal storage media.").  Furthermore, the specification discloses an embodiment wherein a user enters information contained in a credential at a terminal.  *Id.* at 12:28-40.  "The terminal includes a reading device for the credential 145 and an input device, such as a keypad for the user."  Id. Plaintiff argues that credential information that can be obtained automatically by a "reading device" must be stored "in" the credential.  Defendants, on the other hand, argue that the specification is replete with instances stating that information is stored "on" a credential. Defendants also argue that Plaintiff's proposed substitution of "on" with "in" is due to Plaintiff's realization that technology has bypassed the disclosed invention.

The common specification contemplates that the system described in the patents would "be useful for all types of credentials and records," and Defendants have cited to nothing in the intrinsic record indicating that Stambler intended to limit the broad scope of the claimed credentials.  It is, however, apparent that Defendants' proposed construction is intended to unduly limit the scope of the claimed credentials.  Having considered the parties' arguments, and particularly in light of the broad manner in which the patents describe "credentials," the court rejects any attempt to limit the scope of the claimed "credentials" through Defendants' proposed "on" limitation.

The court agrees with Plaintiff that its proposed construction accurately reflects the use of the term "credential information" in the patents-in-suit and avoids jury confusion as to the scope of the term.   In fact, Plaintiff's proposed construction was adopted by the parties in both *JPMorgan* and *Amazon*.  As such, the court construes the term "credential information" to mean "information stored or contained in a credential."

### l.   "trusted entity / party"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| an entity / party that has the authority, as recognized by participants in the relevant system or method, to establish or confirm a party's identity | an official who has previously been enrolled in the relevant system or method, and has the authority to establish or confirm a party's identity |

Plaintiff's proposed construction was adopted by this court in *Amazon*.  Having reviewed the parties' arguments, the court is convinced that its previous construction of this term is correct.  As such, the court construes the "trusted entity / party" terms to mean "an entity / party that has the authority, as recognized by participants in the relevant system or method, to establish or confirm a party's identity."

### m.   "to secure" / "secure . . . to" / "secured to"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| **Claim 47 – "the VAN1 being used to secure at least a portion of the credential information to the at least one party":** "the VAN1 being used to verify or determine that the at least a portion of the information stored or contained in the credential is associated with the at least one party."<br><br>**Claim 56 – "secured to the at least one party by using the VAN1":** "determined or verified as associated with the at least one party by using the VAN." | "to secure" / "secure . . . to" / "secured to": indefinite |

The disputed terms appear in claims 47 and 56.  Claim 47 was asserted in *JPMorgan*, *Merrill Lynch,* and *Amazon*, and none of the defendants in those cases challenged the term as indefinite.  In fact, the *Merrill Lynch* defendants proposed a construction for the phrase in which the terms appear before ultimately agreeing that the phrase did not need to be construed.  Reviewing the claim language, the court cannot say that the "secured to" terms are insolubly ambiguous, and therefore, the court rejects Defendants' indefiniteness argument.  The court's conclusion is further supported by the discussion below, which describes in detail the manner in which the specification explains the "secured to" limitations.  *See In re Marosi*, 710 F.2d 799, 803 (Fed. Cir. 1983) (finding claims not indefinite when the specification provided "a general guideline and examples sufficient to enable a person of ordinary skill in the art to determine whether" the claim limitation was satisfied); *see also Amgen Inc. v. F. Hoffman-LA Roche Ltd*, 580 F.3d 1340, 1371 (Fed. Cir. 2009) (same).

With regard to the correct construction of these terms, claim 47 and 56 recite:

47. The method of claim 41 for further securing the transfer of funds, at least one party being previously issued a credential by a trusted party, the credential information including information associated with the at least one party, and a second variable authentication number (VAN1), *the VAN1 being used to secure at least a portion of the credential information to the at least one party*, authentication and the transfer of funds being denied to the at least one party *if the at least a portion of the credential information cannot be secured to the at least one party by using the VAN1*.

56. The method of claim 51 for further securing the transfer of funds, at least one party being previously issued a credential by a trusted party, the credential information including information associated with the at least one party, and a second variable authentication number (VAN1), *the VAN1 being used to secure at least a portion of the credential information to the at least one party*, authentication and the transfer of funds being denied to the at least one party *if the at least a portion of the credential information cannot be secured to the at least one party by using the VAN1*.

18

Plaintiff argues that the disputed terms relate to credential-issuing and authentication embodiments.  According to Plaintiff, in those embodiments, the party issuing the credential first "verifies the user's identity, based on acceptable documentation."  '302 Patent at 10:6-10.  After verifying the user's identity, the system creates a joint key using information derived from a user PIN and an issuer PIN.  *Id*. at 10:66-11:19.  After verifying the user's identity and creating the joint key, the issuing party creates a credential that includes credential information.  *Id*. at 11:34-55.  The issuer codes the credential information using the joint key to generate a VAN, which is recorded in the credential.  *Id*. at 11:65-12:2.

When the user later transfers or presents the credential, the VAN on the credential can be used to confirm that the information on the credential is associated with the user.  *Id*. at 12:58-13:28.  In the disclosed authentication systems, the user first enters its PIN, which is used by the system to verify the user's identity.  *Id*. at 12:35-54.  The user's PIN and information stored in the credential are next used to obtain the joint key (which was previously generated and stored by the issuer).  *Id*. at 12:55-13:6.  The system then uses the joint key to uncode the VAN stored in the credential.  *Id*. at 13:8-12.  Next, the system compares the information uncoded from the VAN with the credential information.  *Id*. at 13:12-19.  In this embodiment, a favorable comparison confirms the credential was issued by the party that verified the credential information (e.g., the issuer), and that the credential information is unmodified.

 Accordingly, Plaintiff argues that in the disclosed embodiments, the VAN is used to tie, or secure, the credential information to the party to whom it was issued.  In other words, the VAN confirms the association of the credential information and the party to whom the credential was issued.  Thus, Plaintiff proposes that the court construe the phrases "the VAN1 being used to secure at least a portion of the credential information to the at least one party" to mean "the

VAN1 being used to verify or determine that the at least a portion of the information stored or contained in the credential is associated with the at least one party."  And Plaintiff proposes that the phrase "if the at least a portion of the credential information cannot be secured to the at least one party by using the VAN1" means "if the at least a portion of the credential information cannot be determined or verified as associated with the at least one party by using the VAN."

The court has carefully reviewed the sections of the specification upon which Plaintiff relies to support its constructions of the "secured to" phrases.  The court agrees with Plaintiff that, when the "secured to" phrases are viewed in the context of the patent specification, a person of ordinary skill in the art would conclude that the VAN is used to verify or confirm the association of the credential information and the party to whom the credential was issued.  As such, the court adopts the following constructions: (1) "the VAN1 being used to secure at least a portion of the credential information to the at least one party" means "the VAN1 being used to verify or determine that the at least a portion of the information stored or contained in the credential is associated with the at least one party," and (2) "if the at least a portion of the credential information cannot be secured to the at least one party by using the VAN1" means "if the at least a portion of the credential information cannot be determined or verified as associated with the at least one party by using the VAN."

### n.  "first/second storage means"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| This element is not subject to 35 U.S.C. § 112, ¶ 6 and should be construed to mean "a first/second place for storing information, which may include a computer file" | This term is a means plus function limitation as defined by 35 U.S.C. § 112, ¶ : |

In *Merrill Lynch* and *Amazon*, this court concluded that because the term "storage means" was well defined in the art at the time of the invention, and because the claim is not drafted in standard means-plus-function format, the limitation "first/second storage means" is not subject to means-plus-function treatment.  The court is not convinced that its previous analysis is incorrect.  As such, the court rejects Defendants' contention that this term is subject to § 112, ¶ 6.

Plaintiff's proposed construction is the construction this court adopted in *Merrill Lynch* and *Amazon*.  The court agrees with Plaintiff that the previous construction was correct.  Therefore, the court construes the term "first/second storage means" to mean "a first/second place for storing information, which may include a computer file."

### o. "information for identifying the first/second account of the first/second party"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| information that is used to identify an account associated with the first/second party | information sufficient to uniquely identify a specific account of the first/second party |

Plaintiff's proposed construction for the phrase "information for identifying the first/second account of the first/second party" is the construction that this court adopted in *Amazon* and is based on the court's constructions in *Merrill Lynch* and *JPMorgan*.  Defendants' proposed construction, however, was rejected by this court in *JPMorgan*.  Having carefully reviewed Defendants' arguments, the court is not convinced that it erred in its previous rejection of Defendants' proposal or in its previous construction of this term.  As such, the court construes the phrase "information for identifying the first/second account of the first/second party" to mean "information that is used to identify an account associated with the first/second party."

### p.  "instrument for transferring funds" / "payment instrument"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| **"instrument for transferring funds":** a document (including paper or electronic) that is used to transfer funds to a recipient party<br><br>**"payment instrument":** a document (including paper or electronic) that is used to transfer funds to a recipient party in connection with a [payment] | **"instrument" / "instrument for transferring funds":** a document (including paper or electronic) that includes information sufficient to transfer funds to a recipient party<br><br>**"payment instrument":** a document (including paper or electronic) that includes information sufficient to transfer funds to a recipient party |

Plaintiff's proposed constructions were adopted in *JPMorgan* and *Amazon* and agreed to by the parties in *Merrill Lynch*.  Furthermore, the court has previously rejected Defendants' arguments in support of its proposed construction.  The court concludes that its previous reasoning is sound and, therefore, adopts the following constructions: (1) "instrument for transferring funds" means "a document (including paper or electronic) that is used to transfer funds to a recipient party"; and (2) "payment instrument" means "a document (including paper or electronic) that is used to transfer funds to a recipient party in connection with a payment."

### q.  "appending the VAN to the payment instrument"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| joining the VAN to the payment instrument | plain meaning |

Plaintiff's proposed construction was adopted in *Amazon*.  Furthermore, in *Amazon*, the court concluded that there was no requirement that the VAN be joined to the end of the payment instrument.  Considering this, the court concludes that construction of this term will prevent any potential jury confusion as to whether the VAN must be attached to the end of the payment

instrument.   Therefore, the court rejects Defendants' plain meaning construction.   Rather, the court construes this phrase to mean "joining the VAN to the payment instrument."

### r.   "previously issued" / "being previously issued" / "is previously issued"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| issued before the execution of the steps recited in the claim<br><br>The term is not an additional claim step. | issued before the execution of a requirement of the claim<br><br>The term is a claim step. |

Plaintiff's proposed construction for "previously issued" was adopted by the *JPMorgan*, *Merrill Lynch*, and *Amazon* courts, which held (1) that "previously issued" means "issued before the execution of the steps recited in the claim" and (2) that this term does not give rise to an additional claim step.   Having reviewed Defendants' arguments, the court is not convinced that its previous three constructions were erroneous.   As such, the court construes "previously issued" to mean "issued before the execution of the steps recited in the claim" and finds that the "previously issued" limitations are not separate steps in the claimed methods.

### s.   "the adequacy of the funds in the first party's account being verified after the instrument is issued"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| the adequacy of the funds in the first party's account being verified after the instrument for transferring funds is issued<br><br>This term is a limitation, but is not an additional claim step. | after the instrument is issued, determining whether or not the first party has sufficient funds in his/her account to transfer funds |

The parties' argument with regard to the phrase "the adequacy of the funds in the first party's account being verified after the instrument is issued" is whether the phrase recites an additional step in the claimed method.   In *JPMorgan*, this court rejected Defendants' argument

that this phrase is a separate step, concluding that the "limitation does not tell a person of ordinary skill in the art to verify the adequacy of the funds."  The court is convinced that its reasoning in *JPMorgan* is sound and, therefore, rejects Defendants' proposed construction.

The court concludes that its construction of this phrase in *JPMorgan* is accurate.  As such, the court construes the phrase "the adequacy of the funds in the first party's account being verified after the instrument is issued" to mean "the instrument being created before verifying whether an account of the first party has adequate funds or credit to cover or pay the instrument."

### t.   "payor" / "payer"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| The terms "payer" and "payor" refer to the same entity and mean "a person who pays, or who is to make a payment." | Payor: Party paying for or purchasing goods or services<br><br>Payer: Indefinite |

Plaintiff's proposed construction was adopted in *Merrill Lynch* and agreed to by the parties in *Amazon*.  Defendants propose the same constructions that this court rejected in *Merrill Lynch*.  The court is not convinced that its previous construction was erroneous.  As such, the court rejects Defendants' proposed construction.  The court concludes that the terms "payer" and "payor" refer to the same entity and mean "a person who pays, or who is to make a payment."

### u.   "error detection code"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| the result of applying an algorithm for coding information that, when applied to original information, creates coded information wherein changes to the original information can be detected without complete recovery of the original information | the result of applying an algorithm to original information, the result being accessible by a party and separately usable to detect any changes to the original information |

Plaintiff's proposed construction mirrors the court's construction in *Amazon*, but clarifies that an error detection code is used to detect changes to the *original* information, not to the resulting *coded* information. Plaintiff's clarification is consistent with the specification, which describes an error detection code as information coded "in such a manner as to permit detection of changes (e.g., error detection coding) but without complete recovery of the original information." '302 Patent at 5:39-44. Defendants' proposed construction, on the other hand, is not supported by the claim language and it also attempts to read embodiments into the claims. As such, the court rejects Defendants' proposed construction. The court construes the term "error detection code" to mean "the result of applying an algorithm for coding information that, when applied to original information, creates coded information wherein changes to the original information can be detected without complete recovery of the original information."

### v. "coding"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| transforming information by applying a known algorithm | transforming original information into coded information by applying a known algorithm but excluding transforming coded information back into its original state |

The parties' dispute with regard to the term "coding" is whether, as Plaintiff proposes, coding includes "transforming coded information back into its original state." In *Merrill Lynch* and *Amazon*, the court concluded that a coder was distinct from an uncoder and adopted constructions that excluded uncoding from the construction of "coding." The court is not convinced that its conclusion that the coder and uncoder are distinct limitations is incorrect. Therefore, in accordance with its previous rulings, the court rejects Plaintiffs' proposed construction.

Defendants' proposed construction is the construction this court adopted in *Amazon*.  The court agrees with Defendants that its previous reasoning with regard to the term "coding" is sound.  As such, the court construes the term "coding" to mean "transforming original information into coded information by applying a known algorithm, but excluding transforming coded information back into its original state."

### w.  "coding . . . using" / "coding … with" terms

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| **"coding [X] using [Y]":** "transforming [X] into coded information by applying a known algorithm using [Y]"<br><br>**"coding [X] with [Y]":** "transforming [X] into coded information by applying a known algorithm with [Y]" | **"coding [X] using [Y]":** "transforming [X] into coded information by providing [X] as a data input to a known algorithm and applying [Y] as a separate key input to the known algorithm, but excluding transforming coded information back to its original state"<br><br>**"coding [X] with [Y]":** "transforming [X] into coded information by providing [X] as a data input to a known algorithm and applying [Y] as separate key input to the known algorithm, but excluding transforming coded information back to its original state" |

The parties' principal dispute with regard to the "coding…using" and "coding…with" terms concerns Defendants' argument that the disputed phrases require both a "data input" and a "separate key input."  Defendants' argument arises from their conclusion that the claims at issue are limited to "reversible coding."  This court, however, rejected that argument in *Amazon* and is not convinced that it erred in doing so.  As such, the court again rejects the argument that the "coding…using" and "coding…with" terms are limited to "reversible coding."

Consistent with the court's construction of similar phrases in *Amazon*, the court adopts the following constructions of the disputed terms: (1) "coding [X] using [Y]" means "transforming [X] into coded information by applying a known algorithm using [Y]"; and (2)

"coding [X] with [Y]" means "transforming [X] into coded information by applying a known algorithm with [Y]."

## IV.   CONCLUSION

The court adopts the constructions set forth in this opinion for the disputed terms of the patents-in-suit.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the court.

It is so ORDERED.

SIGNED this 28th day of September, 2011.


_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE